Gants, J.
On November 11, 1997, the plaintiff James St. Pierre, while walking on Washington Street in Cambridge, was struck by a vehicle driven by Carol Hunt, which was owned by the defendant, Penske Truck Leasing Corp. (“Penske”), and leased to Ms. Hunt’s employer, CMS Distribution Services, Inc. (“CMS”). There is no dispute that Ms. Hunt was an employee of CMS, and had no affiliation with Penske apart from Penske having leased to CMS the motor vehicle she was driving in the regular course of her employment.
The plaintiffs initially filed suit against both Ms. Hunt and Penske, but the case has been resolved as to Ms. Hunt, leaving Penske as the sole defendant. The plaintiffs’ case against Penske rests solely on the allegation that Ms. Hunt was acting as Penske’s agent at the time of the accident, and that Penske is therefore legally responsible for Ms. Hunt’s alleged negligence. Plaintiffs concede that this allegation of agency rests solely on two legs:
1. G.L.c. 231, §85A, which provides that ownership of the motor vehicle is “prima facie evidence that it was then being operated by and under the control of a person for whose conduct the [owner of the vehicle] was legally responsible,” and
2. the terms of the Vehicle Lease Service Agreement between Penske and CMS.
Penske contends that neither of these two legs can support the plaintiffs’ claim of vicarious liability against Penske, and has moved for summary judgment. After hearing, for the reasons detailed below, this Court finds that the first leg, standing alone, can support plaintiffs’ claim of vicarious liability and, therefore, Penske’s motion for summary judgment is DENIED.
DISCUSSION
In evaluating Penske’s motion for summary judgment, this Court first must determine precisely what G.L.c. 231, §85A means when it provides:
In all actions to recover damages for injuries to the person or to property . . ., arising out of an accident or collision in which a motor vehicle was involved, evidence that at the time of such accident or collision it was registered in the name of the defendant as owner shall be prima facie evidence that it was then being operated by and under the control of a person for whose conduct the defendant was legally responsible, and absence of such responsibility shall be an affirmative defence to be set up in the answer and proved by the defendant.
G.L.c. 231, §85A.
The plaintiffs contend that this language means that evidence of ownership is sufficient by itself to support a finding of agency, regardless of the contrary evidence offered by the defendant. If this interpretation were to prevail, summary judgment (and, later, a directed verdict) may not be awarded to a defendant once evidence of its ownership has been presented.
Penske contends that this language simply means that, once the plaintiffs present evidence of the defendant’s ownership of the motor vehicle responsible for the accident, the burden of persuasion shifts to the defendant to prove by a preponderance of the evidence that the driver was not acting as the defendant’s agent at the time of the accident. Penske’s interpretation preserves the possibility that summary judgment or a directed verdict may be granted on behalf of the owner of the vehicle in negligence cases when the owner has provided conclusive, unchallenged evidence that the driver was not acting as the owner’s agent when the accident occurred.
After careful review, as discussed below, this Court finds that the Supreme Judicial Court initially adopted Penske’s interpretation of the meaning of G.L.c. 231, §85A, but later shifted course and adopted the plaintiffs’ interpretation. This Court is bound by controlling precedent to apply the more recent and still-prevailing interpretation. As a result, this Court must deny Penske’s motion for summary judgment.
G.L.c. 231, §85A was enacted on May 11, 1928 in St. 1928, c. 317, entitled, “An Act to facilitate the recoveiy of damages in certain motor vehicle accident cases.” Smith v. Freedman, 268 Mass. 38, 40 (1929). In examining its meaning, it is instructive to look at how the Supreme Judicial Court in 1929 described its purpose and consequence:
*150 The statute in question does not purport to change the substantive law of negligence in any manner whatever. It merely shifts the burden of proof from the plaintiff to the defendant and requires the latter to prove that at the time of the collision or accident the person operating the motor vehicle was not engaged in the business of the employer . . . The statute does not impair or modify the fundamental rights of a defendant, who is at liberty to overcome the prima facie evidence created by the statute by other evidence . . . The effect of the statute is that if the defendant denies responsibility for the acts of his employee on the ground that at the time of the accident or collision the latter was not engaged in the employer’s business, it is an affirmative defence which must be set up in the answer and proved by the defendant.
Id. at 40-41 (citations omitted). Later in 1929, the Supreme Judicial Court again shed light as to the meaning of the recently enacted statute:
The prima facie evidence created by the statute means evidence which, standing alone and unexplained, maintains the proposition and warrants the conclusion to support which it is introduced .. . If such evidence is not in any way met or controlled, and relates to the decisive issue in the case, a verdict or finding is required in accordance with its effect... It has been contended that the statute is not a valid exercise of legislative power. It cannot rightly be held that the existence of the facts stated therein may not be declared by the General Court to create so strong a probability of the existence of the further fact there set forth as to require the inference of that further fact unless met and controlled by evidence. The inference of the one fact from the proof of the others, as required by the statute, appears to rest upon a rational connection and is not purely arbitrary.
Thomes v. Meyer Store Inc., 268 Mass. 587, 588-89 (1929) (citations omitted).
The Supreme Judicial Court recognized that the consequence of this burden shifting is that, when evidence of ownership is furnished, the issue of agency is almost always a question of fact that must be decided by a jury, but it also acknowledged that there may be rare cases in which summary judgment or a directed verdict may be appropriate. Id. at 589. The Thornes Court declared:
The statute . . . makes registration of the motor vehicle in the name of the defendant as owner prima facie evidence that it was then being operated by a person for whose conduct the defendant is responsible. This in most instances must require submission to the jury of the question of fact whether that prima facie evidence has been overcome and whether the affirmative defence has been made out so as to rebut the otherwise conclusive effect of the prima facie case. It is rarely that it can be ruled as matter of law that an affirmative defence has been made out or that a prima facie case has been overcome.
Id. (emphasis added). Through the language in bold, the Court recognized that summary judgment or a directed verdict in favor of the defendant owner is possible even when the plaintiff has offered into evidence the registration of the motor vehicle in the name of the defendant. In recognizing this possibility, the Court effectively found that the implicit legislative finding that ownership generally infers control is sufficiently rational to permit the Legislature to shift the burden of proof, but it does not mean that it is permissible in every case for the factfinder at trial to make that inference. If such an inference were appropriate in every case, and if the inference alone permitted a finding of agency, then the Supreme Judicial Court would not have acknowledged the possibility that the affirmative defense can be established as a matter of law.
Stated differently, the Supreme Judicial Court in 1929, interpreting the statute that had been enacted the previous year, found that it was rational for the Legislature to shift to the owner of a motor vehicle the burden of proving that the driver of the vehicle was not under his control at the time of the accident, since the owner of a vehicle generally controls that vehicle and is better positioned than the plaintiff to offer evidence on this issue. The Supreme Judicial Court did not find in 1929 that the Legislature, by enacting G.L.c. 231, §85A, had also declared as a matter of law that ownership alone provides a sufficiently strong inference of control in every case as to permit a jury to find an owner vicariously liable regardless of the evidence presented by the owner as part of his affirmative defense. In other words, in 1929, the Supreme Judicial Court did not interpret this statute to permit a finding of vicarious liability against the owner of a motor vehicle based on ownership alone when the overwhelming, undisputed evidence establishes the affirmative defense that the driver was not under the control of the owner.[1]
This conclusion is supported by the Supreme Judicial Court’s holding in 1930 in Wilson v. Grace, 273 Mass. 146 (1930). In that case, Louis Grace (“the son”) negligently drove an automobile owned by his father, the defendant Samuel Grace (“the father”), injuring the plaintiff. Id. at 149. After being found liable by a jury at trial, the father appealed the denial of his motion for a directed verdict, contending that the testimony of father and son, “uncontradicted apart from the statute,” showed that the son operated the car without authority from his father. Id. at 152. The Supreme Judicial Court upheld the jury’s verdict, because the plaintiff was not bound by the testimony of father and son; “(t]he jury could disbelieve it.” Id. The Court later rejected the father’s contention that the silence of the plaintiff constituted an admission as to the absence of *151 authority. Id. at 152-53. However, the Court’s analysis makes it clear that, if the plaintiff had made an admission that was conclusive as a matter of law that the son drove the automobile without his father’s authority, a directed verdict in favor of the father would have been warranted. Id. If the jury could find control through proof of ownership alone, regardless of admissions to the contrary made by the plaintiff, the Court’s analysis would have been far different.
Over time, the Supreme Judicial Court appears effectively to have eliminated the possibility of summary judgment or a directed verdict in favor of the owner of the vehicle on the issue of agency. In a rather subtle shift of emphasis, the Court no longer considered the possibility that the affirmative defense could be established as a matter of law, because it found that ownership alone could establish agency and that all the evidence to the contrary could properly be disregarded. This subtle shift in the interpretation of G.L.c. 231, §85A appears to have commenced in 1946 with the Supreme Judicial Court case of Pochi v. Brett, 319 Mass. 197 (1946). In Pochi, the defendant owner of the vehicle testified that, around 10 p.m., she drove her car to a café in Boston, locked the car, and placed the key, on a key ring, in her bag. Id. at 201. At the café, she sat at a table with three women and two men, none of whom she knew. Id. The bag containing her keys sat on the table. Id. When she left the café around 11:30 p.m., she walked to where her car had been parked, but it was missing, as were the keys from her bag. Id. She telephoned the police around 12 midnight to report the missing car and keys. Id. She had no clue as to how her key had disappeared but, when her car was later found, it emerged that the car had struck a pedestrian later than night at or around 12:30 a.m. Id. at 199 & 201. The only affirmative evidence that the driver of the vehicle was a person for whose conduct the defendant was legally responsible was the evidence that the car was registered in her name. Id. at 204. In considering whether the evidence was sufficient as a matter of law to support the jury’s finding of liability against the defendant, the Court observed that the jury was entitled to disregard the defendant’s testimony and rely on the prima facie evidence of ownership to find the defendant legally responsible for the accident. Id.
The Court found similarly in Arrigo v. Lindquist, 324 Mass. 278 (1949), with facts that more plainly demonstrated the absence of control by the defendant owner of the vehicle. In Arrigo, the undisputed testimony was that the owner’s wife, on business of her own, drove the vehicle into Boston, and left it with a black man at a parking space he supervised. Id. at 279. When the accident occurred, the car was driven by a blonde-haired man who was working at a parking space across the street. Id. The Court recognized that, apart from the statute, there was no evidence that the defendant’s wife, the black man to whom she entrusted the vehicle, or the blonde-haired man who drove the car at the time of the accident was acting as the defendant’s agent. Id. at 280. Yet, it found that, under the statute, the evidence of ownership “makes it possible for the jury to find” that the person operating the car at the time of the accident was the defendant’s servant “without other evidence to that effect, and to disbelieve any evidence that he was not.” Id. Under this analysis, for all practical purposes, summary judgment may never be awarded to the defendant on the issue of agency once the plaintiff proves that the vehicle was registered in the name of the defendant, because a factfinder may disbelieve all the contrary evidence and find agency based solely on the evidence of ownership.
This appears to remain the interpretation favored by the Supreme Judicial Court to this day, although the Court has not directly addressed this issue for many years. See, e.g., Feltch v. General Rental Co., 383 Mass. 603, 610-12 (1981);Nugent v. Classic Car Corp., 379 Mass. 913 (1979) [rescript). Indeed, the outcome of this case is controlled by the Supreme Judicial Court’s decision in Feltch, which presents facts quite similar to the case at bar. In Feltch, as here, the evidence demonstrated that the owner of the vehicle was a rental company that had leased the vehicle to a business, which employed the person who drove the vehicle at the time of the accident. 383 Mass. at 611. The only evidence that the driver was the agent of the rental company was the registration of the vehicle in the name of the rental company; it was plain that the driver was the agent of his employer, not the rental company. See id. Nonetheless, the Supreme Judicial Court found it error for the trial court to grant a directed verdict to the rental company at the close of the evidence, concluding that the evidence of ownership was sufficient by itself to permit a finding of agency. Id. at 610-11. If such evidence in Feltch, standing alone, is sufficient to defeat a motion for directed verdict, then similar evidence here, standing alone, must also be sufficient to defeat a motion for summary judgment.
In short, until the Supreme Judicial Court returns to its original interpretation of G.L.c. 231, §85A and permits summary judgment or a directed verdict in rare cases when overwhelming, undisputed evidence establishes the affirmative defense that the driver was not under the control of the owner, proof that the vehicle is registered in the name of the defendant will always be sufficient, standing alone, to defeat motions for summary judgment and a directed verdict on the issue of agency.[2]
ORDER
For the reasons stated above, the defendant’s motion for summary judgment is DENIED.

 In 1939, the Supreme Judicial Court explained that the policy purpose behind this legislation was to shift the burden of proof to the owner of the vehicle, who was in a better *152 position than the plaintiff to provide evidence regarding control of the vehicle. The Court declared:
Section 85A was important remedial legislation. It was obviously intended to do away with the difficulty which under the law as it had previously stood was often encountered by injured persons in trying to make formal proof that the driver was operating in the owner’s behalf at the time of an accident. The truth about this matter would be known to the defendant and the evidence would normally be within his control. The truth would commonly be unknown to the plaintiff and often very difficult of ascertainment by him. It may well have been thought that greater justice would be done and more responsible control over motor vehicles established by shifting the burden.
Legarry v. Finn Motor Sales, Inc., 304 Mass. 446, 448-49 (1939).

 In cases where, despite ownership of the car, agency plainly does not exist, the only means for a court to prevent a miscarriage of justice is by granting a motion for new trial. See Bergdoll v. Suprynowicz, 359 Mass. 173, 175 (1971).